UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WHITTARD OF CHELSEA, INC.<br><br>Debtor. | Chapter 7<br><br>Case No. 09-10007-CSS<br><br>**Objection Deadline: March 10, 2009 at 4:00 p.m.**<br>**Hearing Date: March 17, 2009 at 2:00 p.m.** |

## MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER APPROVING SALE OF ALL OR SUBSTANTIALLY ALL ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

George L. Miller, Chapter 7 Trustee (the "Trustee") for the above-captioned Chapter 7 case (the "Debtor") by and through his undersigned counsel, hereby files this Motion of Chapter 7 Trustee for an Order Approving Sale of All or Substantially All Assets, Free and Clear of Liens, Claims and Encumbrances (the "Motion") and in support thereof, and respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 18 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief sought herein are §§ 105 and 365 of the Bankruptcy Code and Fed. R. Bankr. P. 2002 and 6004.

### BACKGROUND

3. On January 2, 2009 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

4. Thereafter, the Office of the United States Trustee appointed George L. Miller as the Chapter 7 Trustee of the Debtor's estates.

5. The Debtor operated retail stores selling certain varieties of Whittard of Chelsea branded teas and tea related products (the "Assets"). The Debtor had four locations: two in Boston, Massachusetts, one in San Diego, California and one in Canoga Park, California. Additionally, the Debtor had a warehouse location for its tea and tea related products in Grandville, Michigan (collectively, all of the retail stores and warehouse locations are referred to as the "Locations").

6. Each of the retail stores were very small and appear to have very little valuable assets.

7. Immediately after the Trustee's appointment, the Trustee was faced with a difficult dilemma to determine whether to deem this case to be an asset or a no asset case as the costs that the Trustee would need to incur to gather all the Debtor's assets and sell them and the administrative expenses related thereto could easily exceed the value that the estate could derive therefrom.

8. In order to test the market and marketability of the Assets, the Trustee engaged an experienced broker to assist him in this analysis, Apto Solutions, Inc. ("Apto"). Because most of the products were Whittard of Chelsea brand, Apto contacted retailers and e-tailers that already sold the brand. Apto also offered the Assets to other general tea retailers and e-tailers. Apto extensively searched all potential buyers in the Debtor's industry to locate the best potential purchaser available. Generally, no one expressed a sincere interest. However, Apto was fortunately able to find a perfect buyer for the Assets: Annie Allison d/b/a Annie's Tea Time ("Annie's").

9. In the Trustee's view, Annie's offer for the Assets gave the estate a unique opportunity to create some value for the creditors in this case, where none otherwise could have

been found. Annie's offered to purchase all of the Assets for $46,000 plus, importantly, Annie's agreed to go to each of the Locations and remove all the Assets at her own cost expense. With Annie's assuming this critical role and taking care of the difficulties, logistics and costs related to this transaction, made the offer particularly attractive for the Trustee.

10. Accordingly, on February 18, 2009, the Trustee and Annie's entered into that certain Asset Purchase Agreement ("APA") whereby, *inter alia*, the Trustee agreed to sell the Assets to Annie's for $46,000. A true and correct copy of the APA is attached hereto as Exhibit "A".

### RELIEF REQUESTED

11. The Trustee seeks approval to sell the Assets to Annie's pursuant to the terms and conditions of the APA as provided therein.

12. In light of the small margins of this case and the fact that the Trustee's broker, Apto does not believe that any other parties will step forward expressing an interest in the assets, the Trustee does not believe that formal bid procedures or an auction is necessary to achieve the highest and best price for the Assets. Nevertheless, the Trustee acknowledges that certain any interested party should be entitled to step forward to offer a higher and better price. Thus, the APA itself provides for the possibility of another buyer making a higher offer.

13. The Trustee is serving this Motion on the list of potential buyers attached hereto as Exhibit "B" which includes the parties contacted by Apto. The Trustee suggests that any interested bidder file an objection to the Motion and attend the hearing on this Motion in person on March 17, 2009 at 2:00 p.m. to present an offer which is higher and better for the estate as provided in Section 7.2(c) of the APA. If such an alternate purchaser surfaces, the Trustee will certainly enter into an enhanced sale agreement.

14. Absent such competition materializing, the Trustee respectfully requests that this Court enter an Order approving the sale as provided in the APA.

15. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Moreover, Section 105(a) of the Bankruptcy Code provides that the bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

16. Bankruptcy courts are given a great deal of discretion when deciding whether to authorize a sale of a debtor's assets outside of the ordinary course of business. See In re Chateaugay Corp., 973 F.2d 141, 144 (2d Cir. 1993). Under applicable legal standards, approval of a sale is appropriate if the Court finds that the transaction represents a reasonable business judgment on the part of the trustee. See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Industry Valley Refrigeration & Air Conditioner Supplies, Inc., 77 B.R. 15 (Bankr. E.D. Pa. 1987).

17. Courts have made it clear that a showing of a sound business justification need not be unduly exhaustive but, rather, a trustee is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. See Lionel, 722 F.2d at 1071.

18. In determining whether a sale satisfies the business judgment standard, courts in this Circuit require: (a) that there be a sound business reason for the sale; (b) that accurate and

4

reasonable notice of the sale be given; (c) that the sale yield an adequate price, i.e., one that is fair and reasonable; and (d) that the parties to the sale have acted in good faith. In re Titusville Country Club. 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

19. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. See Fed. R. Bankr. P. 6004(f)(1). Further, pursuant to Bankruptcy Rule 2002(a)(2), this Court may, for cause shown, shorten or direct another method of giving notice regarding the general twenty (20) day by mail period for the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. See Fed. R. Bankr. P. 2002(a)(2). Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale or lease of property required under Bankruptcy Rule 2002(a)(2) must include the terms and conditions of any private sale, and the time fixed for filing objections See Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale or lease of property is sufficient if it generally describes the property to be sold. Id. Courts have also permitted "word of mouth" transactions to constitute accurate and reasonable notice of a sale. See Industrial Refrigeration, 77 B.R. 15, 22 (Bankr. E.D. Pa. 1987).

20. The Trustee submits that, under the circumstances of this case, the sale process described above will produce a maximum return to the bankruptcy estates and that the notice and procedures set forth in this Motion satisfy the notice requirements of the Bankruptcy Rules and section 363(b) of the Bankruptcy Code, constitute good and sufficient notice, and that no other or further notice is required. Moreover, the Trustee believes that the price that Annie's will pay for the Assets is fair and adequate, considering the limited resale market for the Assets. Therefore, Annie's is entitled to the protection of Section 363(m) of the Bankruptcy Code and receive the Assets free and clear of liens and encumbrances.

WHEREFORE, the Trustee respectfully requests that this Court enter an order: (i) approving the sale of the assets free and clear of all liens and encumbrances and (ii) granting any other relief that this Court deems just and proper.

**FLASTER/GREENBERG P.C.**

Dated: February 20, 2009

William J. Burnett (DE No. 4078)
901 N. Market Street, 4th Floor
Wilmington, DE 19801
Telephone: 302-351-1910
Facsimile: 302-351-1919

*Proposed Counsel for the Chapter 7 Trustee, George L. Miller*

6